**U.S. COURTS**

JUN 23 2026

Rcvd_____Filed_____Time_____ Mail

STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

*UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF IDAHO*

| | |
|---|---|
| **BRITTANY N. NOMEE**<br>**Petitioner**<br><br>**and**<br><br>**THE COEUR D' ALENE TRIBAL**<br>**COURT; JUDGE F. DANA KELLEY in**<br>**his official capacity; and Paul Nomee**<br>**Respondents** | **Case No.**<br><br><br>**VERIFIED PETITION FOR WRIT OF**<br>**HABEAS CORPUS**<br>**PURSUANT TO 25 U.S.C. § 1303**<br>**(EMERGENCY RELIEF REQUESTED)** |

## *I. INTRODUCTION*

*Petitioner Brittany N. Nomee respectfully petitions this Court for relief pursuant to the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1303.*

*This Petition does not seek federal relitigation of ordinary custody determinations. Rather, Petitioner challenges cumulative restraints imposed through Coeur d'Alene Tribal Court proceedings that evolved beyond temporary custody regulation into escalating contempt sanctions, incarceration exposure, warrant issuance, severe restrictions on parent-child association, denial of meaningful participation, and deprivation of meaningful review.*

*Petitioner presently faces:*

- *a 37-day sentence of incarceration;*
- *an active arrest warrant;*
- *continuing contempt sanctions;*
- *severe restrictions on communication and association;*
- *revocation of remote participation privileges;*
- *substantial restraints on movement and participation;*
- *and severe and prolonged restriction of meaningful parent-child association.*

***See Exhibit 1.***

*As of the filing of this Petition, Petitioner has had no in-person, telephonic, video, or other direct contact with her minor child since December 27, 2025. Petitioner alleges these restraints were imposed through proceedings that, viewed cumulatively, ceased to provide fundamentally fair process as required under ICRA.*

## II. JURISDICTION AND VENUE

*This Court has jurisdiction pursuant to:*

- *25 U.S.C. § 1303; and*
- *28 U.S.C. § 1331.*

*Federal courts possess jurisdiction under ICRA to review habeas petitions challenging unlawful detention or sufficiently severe restraints imposed through tribal authority.*

*Federal courts have recognized that habeas jurisdiction under 25 U.S.C. § 1303 may extend beyond physical incarceration where tribal proceedings impose severe restraints on liberty. See Poodry v. Tonawanda Band of Seneca Indians, 85 F.3d 874 (2d Cir. 1996).*

*Although ordinary tribal custody disputes generally do not constitute habeas custody, Petitioner alleges the cumulative restraints imposed here exceed ordinary custody regulation and instead constitute severe restraints on liberty, movement, participation, and familial association.*

*Petitioner is "in custody" for purposes of § 1303 because she remains subject to:*

- *a defined term of incarceration;*
- *an active arrest warrant;*
- *suspended contempt sanctions;*
- *severe restrictions on association and participation;*
- *revocation of remote access to proceedings;*
- *and continuing restraints on parent-child contact.*

### See Exhibits 1 and 2.

*These restraints are neither speculative nor hypothetical. Petitioner remains subject to immediate arrest and incarceration pursuant to the challenged contempt orders.*

*Venue is proper in the District of Idaho because the challenged proceedings and restraints originated through the Coeur d'Alene Tribal Court in Idaho.*

## III. PARTIES

*Petitioner Brittany N. Nomee is a non-member resident of Washington State and the biological mother of minor child* G.J.N. 2016

*Respondent Coeur d'Alene Tribal Court issued the challenged orders and sanctions.*

*Respondent Judge F. Dana Kelley presided over the challenged proceedings.*

*Upon information and belief, the father of the minor child, Paul Nomee, is employed within the Coeur d'Alene Tribal Justice system.*

*Petitioner further alleges that the Court Manager supervising portions of the Tribal Court administrative structure is Paul Nomee's maternal uncle.*

*Petitioner does not allege these relationships alone establish unlawful conduct. Rather, Petitioner alleges these relationships heightened appearance and neutrality concerns when combined with repeated procedural irregularities, escalating sanctions, unequal enforcement, and the practical inability to obtain meaningful neutral review.*

**See Exhibits 8A through 8G.**


### IV. EXHAUSTION OF TRIBAL REMEDIES / FUTILITY

*Petitioner repeatedly attempted to obtain relief through Tribal Court proceedings.*

*Petitioner filed:*

• *a Motion to Recuse the presiding judge;*
• *a Motion for Reconsideration of the Temporary Parenting Plan;*
• *a Notice of Appeal and Motion to Vacate/Modify;*
• *a Motion to Vacate the February 2026 Order;*
• *requests for sibling contact;*
• *requests for alternative supervision arrangements;*
• *and requests for appointment of counsel.*

**See Exhibits 8A through 8G.**

*Petitioner's Motion to Recuse was denied.*

**See Exhibits 8A and 8B.**

*Petitioner's attempted appeal was denied on the basis that the challenged orders were not final appealable orders.*

**See Exhibits 8D and 8E.**

*The proceedings nevertheless continued under repeatedly renewed "temporary" orders imposing escalating restraints while simultaneously preventing meaningful appellate review before incarceration exposure intensified.*

*Petitioner now faces incarceration and warrant enforcement before meaningful review can occur.*

*Further exhaustion would therefore be futile.*

## V. LEGAL FRAMEWORK UNDER ICRA

*ICRA guarantees that no tribe exercising powers of self-government shall: "deprive any person of liberty or property without due process of law."*

*25 U.S.C. § 1302(a)(8).*

*Petitioner acknowledges that federal courts generally avoid intervening in ordinary tribal custody disputes.*

*However, this Petition challenges restraints extending beyond ordinary custody regulation and instead challenges cumulative punitive restraints including incarceration, warrant issuance, contempt sanctions, denial of meaningful review, severe restrictions on familial association, and procedural barriers impairing fundamental fairness.*

*Petitioner further alleges the cumulative restraints imposed here became functionally coercive and punitive in nature, particularly where nominal visitation rights became economically and practically impossible to exercise.*

## VI. STATEMENT OF FACTS

### A. Progressive Restriction of Parenting Time

*Following disputed allegations during mid-2025, restrictions progressively escalated.*

*On November 18, 2025, the Tribal Court entered an order:*

- *limiting visitation to the Coeur Center;*
- *prohibiting Petitioner from removing the child from the facility;*
- *authorizing unilateral visit termination;*
- *requiring supervised Zoom visitation;*
- *requiring monitoring and recording;*
- *and compelling mental-health evaluations and releases.*

**See Exhibit 2.**

*The order further restricted in-person visitation to:*

- *designated hours;*
- *reservation boundaries;*
- *and strict supervision conditions.*

**See Exhibit 2.**

**B. Economic Impossibility of Maintaining Contact**

*The supervision structure imposed severe financial burdens upon Petitioner.*

*Petitioner's approximate monthly income is approximately $187.*

*Court-ordered supervised visitation required approximately:*

- *$50-$44 per hour through Fulcrum services; and*
- *$80 per hour with a two-hour minimum through Echelon services.*

**See Exhibits 6A and 6B.**

*Petitioner additionally was required to travel approximately 700 miles round-trip for in-person visitation.*

*These cumulative costs rendered meaningful visitation economically impossible for Petitioner to maintain consistently.*

*Although visitation technically remained available on paper, the imposed conditions rendered compliance functionally impossible, transforming nominal visitation rights into illusory access.*

*Petitioner proposed lower-cost and less restrictive alternatives, including mutually acceptable nonprofessional supervisors and*
*sibling Zoom contact.*

**See Exhibits 8C, 8F, and 10.**

*Those alternatives were denied.*

### C. Functional Suspension of Contact Prior to Court Authorization

*Beginning December 27, 2025, Petitioner's visitation was repeatedly suspended or canceled before formal judicial authorization.*

*Email communications demonstrate that scheduled visitation and video contact were terminated prior to the January 14, 2026 ex parte order formally suspending visitation.*

**See Exhibits 3A, 3B, 3C, and 4.**

*Petitioner alleges visitation was therefore functionally suspended before judicial authorization was formally entered.*

### D. Unequal Enforcement and Selective Restrictions

*Petitioner repeatedly filed motions alleging interference with visitation and denial of contact.*

*See Exhibits 8C, 8D, and 8F.*

*Petitioner alleges those motions were delayed, denied, or ignored.*

*By contrast, Petitioner was repeatedly subjected to:*

* *contempt findings;*
* *escalating restrictions;*
* *supervision requirements;*
* *incarceration;*
* *and warrant issuance.*

*See Exhibits 1 and 2.*

*Petitioner further alleges the child's father was arrested on multiple occasions during periods in which the minor child was believed to be in his care.*

*See Exhibits 9A and 9B.*

*Petitioner alleges she was denied emergency custody and meaningful information regarding the child's whereabouts during at least one such incarceration period.*

*See Exhibit 8D.*

*E. Child Welfare and Emotional Harm*

*A March 2026 Marimn Health behavioral-health assessment documented that the child was experiencing emotional distress related to "minimal contact" with his mother and difficulty understanding the prolonged separation.*

*See Exhibit 5.*

*Petitioner alleges the proceedings increasingly interpreted the child's emotional deterioration as justification for further restriction while failing to adequately consider whether prolonged separation itself contributed to the child's distress.*

*F. Procedural Barriers and Denial of Meaningful Participation*

*Petitioner repeatedly encountered procedural barriers while proceeding pro se from approximately 350 miles away.*

*Petitioner was required to notarize filings, restricted from direct communication with court staff, and denied remote appearance privileges.*

*See Exhibits 8D and 1.*

*The April 17, 2026 Order additionally states Petitioner "flipped off the Court" and stated "fuck off" during the February 20 hearing.*

*See Exhibit 1.*

*Petitioner disputes those factual characterizations and alleges the written order materially mischaracterized the hearing record.*

**See Exhibit 7.**


## VII. CUMULATIVE RESTRAINTS ON LIBERTY

*The restraints imposed upon Petitioner cannot be evaluated in isolation.*

*Collectively, the proceedings resulted in:*

- *elimination of overnight visitation;*
- *severe restriction of in-person contact;*
- *prohibition on removing the child from designated locations;*
- *extensive supervision requirements;*
- *communication restrictions;*
- *revocation of remote appearance privileges;*
- *contempt sanctions;*
- *incarceration;*
- *warrant issuance;*
- *and prolonged separation from the minor child and his siblings.*

*Although many individual restrictions were characterized as temporary or protective measures, the cumulative effect became a severe and ongoing restraint upon Petitioner's liberty and meaningful familial association.*


## VIII. CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF DUE PROCESS
### (25 U.S.C. § 1302(a)(8))

*Petitioner incorporates all preceding paragraphs.*

*Petitioner alleges due-process violations including:*

- *reliance upon disputed evidence;*
- *inability to meaningfully review evidence used against her;*

- *escalating sanctions based upon ambiguous or inconsistently enforced orders;*
- *unequal enforcement;*
- *barriers to court access;*
- *material factual inaccuracies in written orders;*
- *denial of meaningful review before escalating sanctions;*
- *and cumulative restrictions rendering compliance functionally impossible.*

## COUNT II
## UNLAWFUL RESTRAINT ON LIBERTY
## (25 U.S.C. § 1303)

*The combination of:*

- *incarceration;*
- *warrant issuance;*
- *suspended sanctions;*
- *communication restrictions;*
- *supervision requirements;*
- *revocation of remote participation;*
- *financial impossibility of maintaining contact;*
- *and ongoing restraints on familial association*

*constitutes severe restraints on liberty cognizable under 25 U.S.C. § 1303.*

## COUNT III
## DENIAL OF FUNDAMENTALLY FAIR PROCEEDINGS

*Petitioner alleges the cumulative proceedings evolved from temporary custody regulation into a punitive enforcement structure lacking meaningful procedural fairness.*

*Petitioner further alleges meaningful review became practically unavailable through:*

- *repeated temporary-order extensions;*
- *barriers to access;*
- *escalating sanctions;*
- *warrant exposure;*
- *incarceration risk;*
- *and the absence of meaningful appellate relief before liberty restraints intensified.*

## IX. REQUEST FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

A. Issue a Writ of Habeas Corpus pursuant to 25 U.S.C. § 1303;

B. Immediately stay enforcement of the 37-day incarceration sentence;

C. Immediately stay enforcement of the active arrest warrant;

D. Enjoin further incarceration arising from the challenged contempt findings pending federal review;

E. Grant emergency injunctive relief necessary to prevent continued enforcement of restraints imposed without fundamentally fair procedures;

F. Grant such additional relief as this Court deems just and proper.


## X. VERIFICATION

I, Brittany N. Nomee, declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.


Respectfully submitted,

DATED: 06/14/2026


_____

Brittany N. Nomee
Petitioner, Pro Se
[(360)839-9825]
[pnbnomee2.0@gmail.com]